**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

LONNIE WILLIAMS,

    Defendant.
_____/

No. C 05-0383 PJH

**ORDER DENYING DEFENDANT'S MOTION FOR DISCOVERY OF MATERIAL RE: ALLEGED SELECTIVE PROSECUTION**

On October 12, 2005, this court heard arguments on Williams' motion for discovery regarding the prosecution's alleged selective prosecution in its charging decision.  The court took the matter under submission and ordered the parties to submit supplemental briefs.  Williams subsequently filed a supplemental brief, the government filed an opposition, Williams filed a reply, and the government filed a surreply.  Having considered the parties' arguments, the papers, and the relevant legal authority, the court DENIES Williams' motion for the reasons set forth below.

**BACKGROUND**

Williams is charged with one count of possession of a firearm with an obliterated serial number pursuant to 18 U.S.C. § 922(k).  The charge stems from his October 17, 2004 arrest by San Francisco Police Department ("SFPD") officers.

Initially, Williams was charged in the San Francisco County Superior Court with several felony counts and a misdemeanor count related to his October 17, 2004 arrest.  Mr. Rosenbush, Williams' attorney in this case, also represented him in state court.  On November 18, 2004, Williams pleaded guilty in state court to the misdemeanor offense of carrying a

loaded weapon while in a public place, while not being the registered owner, in violation of California Penal Code § 12031(a)(1) and (a)(2)(F). The felony charges were dropped, and Williams was placed on probation with a ten day jail sentence. Subsequently, on December 22, 2004, Williams was brought in for questioning by two SFPD homicide detectives. They sought to question Williams regarding a homicide that occurred three days prior to his arrest. The weapon that SFPD officers recovered from Williams on October 17, 2004, had subsequently been determined to have been used in the homicide that occurred on October 14, 2004.

Thereafter, the DOJ issued a *Petite* waiver[1] such that the U.S. government could pursue federal prosecution. On June 2, 2005, a magistrate judge authorized a federal complaint, and on June 3, 2005, Williams was arrested by the FBI on an arrest warrant secured in this case. The charge in this case is based on the same operative facts as those in the state case.

## DISCUSSION

Williams contends that the government is selectively prosecuting him in federal court on account of his race. In support of his motion, Williams presented evidence that eleven defendants, including Williams, have been prosecuted in the San Francisco County Superior Court for violating California Penal Code § 12094 (possession of a firearm with an obliterated serial number) during 2003 and 2004. Roth Decl. Five of the eleven defendants, including Williams, were African-American. Oasa Decl. (based on investigator's inquiries of the defense counsel for the other ten defendants). Only three of the eleven defendants, including Williams, were subsequently prosecuted federally on firearm charges.[2] All three, including

---

[1] The *Petite* policy is an internal DOJ policy that provides that the U.S. government not prosecute someone federally "if the alleged criminality was an ingredient of a previous state prosecution against that person unless the federal prosecution is specifically authorized in advance by the DOJ itself, upon a finding that the prosecution will serve compelling interests of law enforcement." *Thompson v. United States*, 444 U.S. 248, 248 (1980).

[2] The other two defendants prosecuted federally were charged with unlawful possession of a firearm by a felon under 28 U.S.C. § 922(g).

Williams, were African-American. Rosenbush Decl., Oasa Decl.

"[T]he decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Id*. at 463. To establish an equal protection violation based on selective prosecution, "the claimant must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *United States v. Arenas-Ortiz,* 339 F.3d 1066, 1068 (9th Cir. 2003) (citing *Armstrong*, 517 U.S. at 465).

To show discriminatory effect, Williams is required to "show that similarly situated individuals of a different ethnic origin were not prosecuted." *Id.* As for discriminatory purpose or intent, the Ninth Circuit has held that "[a]wareness of consequences is not the same as intent to discriminate." *United States v. Turner*, 104 F.3d 1180, 1184 (9th Cir. 1997). "The kind of intent to be proved is that the government undertook a particular course of action 'at least in part because of not merely in spite of its adverse effects upon an identifiable group.'" *Id.* (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

The showing necessary to obtain discovery on a selective prosecution claim is "somewhat less" than a showing required on the merits. *Id.* at 1185. "[A] defendant who seeks discovery on a claim of selective prosecution must show some evidence of *both* discriminatory effect and discriminatory intent." *United States v. Bass*, 536 U.S. 862, 863 (2002) (emphasis added) (citing *Armstrong*, 517 U.S. at 465). The Ninth Circuit has noted, though, that this discovery standard is nevertheless "a rigorous one designed to minimize interference with the prosecutorial function." *Id.*

### A. Discriminatory Effect

Williams is required to produce "some evidence that similarly situated defendants of other races could have been prosecuted, but were not." *Turner*, 104 F.3d at 1185. In other

3

words, Williams is required to show that similarly situated non-African-American defendants were *not* prosecuted federally based upon the same conduct.

Williams rests his argument on a showing that the non-African-American defendants who were not federally prosecuted were arrested and/or charged with the same offense for which he was federally prosecuted. This court may, however, consider non-charge-related factors in determining whether the non-African-American defendants are similarly situated. *See Turner*, 104 F.3d at 1185. In *Turner*, the Ninth Circuit held that white cocaine sellers not shown to have been gang members or to have sold large quantities were not similarly situated to an African-American seller of large quantities targeted because of his gang membership.[3] *Id.* In rejecting the *Turner* defendant's request for discovery on a selective prosecution claim, the court considered "the sociological factors affecting the pattern of crime." *Id.* at 1184. It rejected the defendant's argument that "selection of a particular community for a particular enforcement operation constitutes racial discrimination if it is forseeable that because of the ethnic composition of the community one race will necessarily provide most of the government's targets." *Id.* at 1185.

Here, like *Turner*, the court finds that there were also additional non-charge-related factors relevant to the government's decision to prosecute Williams federally, including: (1) the discovery that the gun recovered on Williams had been used in a homicide; (2) Williams' known association with gang members; (3) Williams having pled to a misdemeanor offense not reflecting the seriousness of the charge of possession of a firearm with an obliterated serial number; and (4) the application of the *Petite* policy to Williams' case, which itself requires an examination of individual factors.

While the court agrees that it would be the unusual case where a defendant would be able to show the existence of multiple identical non-charge-related factors, here, Williams has not demonstrated that *any* of these factors are present with respect to the six non-African-

---

[3]This court was unable to locate any published Ninth Circuit cases, but did find unpublished Ninth Circuit cases interpreting *Turner* to permit the evaluation of non-charge-related factors in considering discriminatory effect.

American defendants included in his comparison group.

### B.     Discriminatory Intent

Although Williams is required to show some evidence of both discriminatory effect and intent, he focused almost exclusively on the issue of discriminatory effect. Granted, there are few cases discussing the intent showing required to obtain discovery. That is because most of the appellate courts addressing the issue disposed of the motions based upon the defendant's failure to show sufficient discriminatory effect.

In *Turner*, the Ninth Circuit touched upon the issue of intent. It held that where the evidence demonstrated that the defendants' prosecution was "no more than the consequence[] of the investigation of violent street gangs," there was no evidence that defendants were targeted because of their race. *Id.* at 1184. The Ninth Circuit noted that defendants "offered no evidence whatsoever of an intent on the part of the prosecutors to prosecute them on account of their race, and the prosecutors and FBI investigators" denied such motivation under oath. *Id.* at 1185; *cf. United States v. Jones*, 159 F.3d 969, 977-78 (6th Cir. 1998) (finding abundant evidence of discriminatory intent in support of defendant's motion for discovery where officers made t-shirts for two African-American defendants that contained derogatory phrases, and sent racially derogatory postcards to defendants while in jail).

Here, Williams has produced *no* evidence that the government prosecuted him federally "in part because of not merely in spite of" the fact that he is African-American. *See Turner*, 104 F.3d at 1184.

### CONCLUSION

Because Williams has not produced sufficient evidence that "similarly situated defendants of other races could have been prosecuted, but were not," or that the government prosecuted him in part because of his race, his motion for discovery is DENIED. The parties shall appear for status and trial setting on December 7, 2005, at 1:30 p.m.

**IT IS SO ORDERED.**

5

Dated: November 23, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge